UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TODD DESCUTNER, )<br>)<br>    Plaintiff, )<br>)    3:12-cv-00371-RCJ-VPC<br>vs. )<br>)<br>NEWMONT USA LIMITED et al., )    **ORDER**<br>)<br>    Defendants. )<br>_____ ) | |

This case arises out of an employer's alleged failure to pay its employees for time worked during "breaks" and its alleged failure to pay overtime despite the fact that employees are entitled to it when the "working breaks" are considered. Pending before the Court is Defendants' motion to dismiss. For the reasons given herein, the Court grants the motion.

## I.     FACTS AND PROCEDURAL HISTORY

Plaintiff Todd Descutner worked for Defendant Newmont USA Ltd. or Defendant Newmont Mining Co. between January 2006 and June 2010. (*See* Compl. ¶¶ 4, May 18, 2012, ECF No. 1).[1] Defendants require certain hourly employees to work uncompensated during lunch and break periods, referring to the policy as keeping a "vigilant shift." (*Id.* ¶¶ 3, 9). Because Plaintiff must work during his putative break and lunch periods, he in fact works more than eight

---

[1] Plaintiff does not distinguish between Defendants but refers to them collectively as "Newmont." (*See, e.g.*, *id.*).

hours per day and more than forty hours per week, yet he is not compensated at all for work performed during these periods, and he therefore of course does not receive overtime pay for the hours worked in excess of forty hours per week. (*See id.* ¶¶ 29, 37–38).

Plaintiff sued Defendants in this Court on three causes of action: (1) Violation of the Fair Labor Standards Act ("FLSA") § 216(b) (class or collective action); (2) Violation of Nevada Revised Statutes ("NRS") Section 608.018 (individual claim); and (3) Violation of NRS Section 608.100 (individual claim). Defendants have moved to dismiss.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79

1  (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff
2  pleads factual content that allows the court to draw the reasonable inference that the defendant is
3  liable for the misconduct alleged."). In other words, under the modern interpretation of Rule
4  8(a), a plaintiff must do more than specify the legal theory under which he seeks to hold a
5  defendant liable; he also must identify the theory of his own case so that the court can properly
6  determine not only whether any such legal theory exists (*Conley* review), but also whether he has
7  any basis for relief under such a theory even assuming the facts are as he alleges (*Twombly-Iqbal*
8  review).

9    "Generally, a district court may not consider any material beyond the pleadings in ruling
10 on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the
11 complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner*
12 *& Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents
13 whose contents are alleged in a complaint and whose authenticity no party questions, but which
14 are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6)
15 motion to dismiss" without converting the motion to dismiss into a motion for summary
16 judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule
17 of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay*
18 *Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court
19 considers materials outside of the pleadings, the motion to dismiss is converted into a motion for
20 summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir.
21 2001).

22 **III.  ANALYSIS**

23   Defendants ask the Court to dismiss for five reasons: (1) the claims are preempted by the
24 LMRA; (2) Plaintiff has failed to exhaust his administrative remedies under the collective
25

1  bargaining agreement ("CBA");[2] (3) there is no private right of action under the state statutes
2  Plaintiff invokes; (4) there is no personal jurisdiction over Newmont Mining Co.; and (5) as to
3  the class or collective action under the FLSA, Plaintiff has not sufficiently pled facts indicating
4  similarities between the putative class members.

5        The Court rules that there is no private right of action under NRS sections 608.100 or
6  608.018.  The Nevada Supreme Court has explicitly ruled there is no private right of action to
7  enforce section 608.100. *See Baldanado v. Wynn Las Vegas, LLC*, 194 P.3d 96, 100–05 (Nev.
8  2008) (finding no private right of action under section 608.100 and two other sections of Chapter
9  608); *see also Lucas v. Bell Trans*, No. 2:08-cv-01792, 2009 WL 2424557 at *2–5 (D. Nev. June
10 24, 2009) (Jones, J.) (citing *id.*).  Another court of this District has ruled that there is a private
11 right of action for violations of section 608.018 pursuant to section 608.140. *See Buenaventura v.
12 Champion Drywall, Inc.*, 803 F. Supp .2d 1215, 1218–19 (D. Nev. 2011).  Although the Nevada
13 Supreme Court has not directly addressed the question, the *Buenaventura* court reasoned that
14 because section 608.018 governs payment of overtime wages, and because there is a private right
15 of action to recover unpaid wages under section 608.140, an employee may sue to recover wages
16 owed under the standards of section 608.018 via a section 608.140 action. *See id.* at 1218.

17       The Court disagrees, however, and rules that section 608.140 does not imply a private
18 right of action to sue under the labor code, but only to sue in contract.  Section 608.140 clearly
19 presumes the availability of some kind of private right of action to recover wages, because it
20 governs attorney's fees and costs in such actions. *See* Nev. Rev. Stat. § 608.140 ("Whenever a
21 mechanic, artisan, miner, laborer, servant or employee shall have cause to bring suit for wages
22 earned and due according to the terms of his or her employment . . . .").  However, section
23 608.140 only implies a private right of action to recover wages "*earned and due according to the*

---

[2] Plaintiff admits the existence of the CBA. (*See* Compl. ¶ 7).

*terms of his or her employment*," and therefore appears to govern fees and costs only in common law contractual suits. *Id.* (emphasis added).  The statute does not imply a private remedy to enforce the labor statutes, which impose external standards for wages and hours.  The *Baldanado* Court was emphatic that "the absence of an express provision providing for a private cause of action to enforce a statutory right strongly suggests that the Legislature did not intend to create a privately enforceable judicial remedy." *Baldanado*, 194 P.3d at 101.  In ruling that there was no private right of action under sections 608.100, 608.160, and 613.120, the *Baldanado* Court indicated that the Labor Commissioner's authority covered sections 608.005 to 608.195 and that "when an administrative official is expressly charged with enforcing a section of laws, a private cause of action generally cannot be implied." *Id.* at 102.  In light of *Baldanado*'s broad language and warning against lightly implying private causes of action, the Court believes that section 608.018 is within the Labor Commissioner's exclusive jurisdiction, just as section 608.100 is.

Plaintiff relies on footnote 33 of *Baldanado*, which notes, "a private cause of action to recover unpaid wages is entirely consistent with the express authority under NRS 608.140 to bring private actions for wages unpaid and due." *See* 194 P.3d at 104 n.33.  But the *Baldanado* Court did not directly address the question of whether section 608.140 authorized a private suit or, more importantly, what kinds of suits it implied.  Rather, it made the comment in footnote 33 to contrast those sections of the labor code under which there was no language possibly implying any kind of private right of action at all.

Section 608.140 implies only a cause of action to recover wages unpaid and due "according to the terms of his or her employment," which strongly implies a contractual remedy, not a remedy to enforce the labor laws.  The phrase "according to the terms of . . . employment" means "according to the contractual terms of . . . employment," as opposed to something like "according to the laws concerning . . . employment."  This result depends on whether "terms" under section 608.140 more reasonably means "contractual terms," "regulatory standards," or

both. The Court finds that it means something more like "contractual terms." A contemporary dictionary defines the word "term" (along with irrelevant definitions) as "[c]ondition; arrangement." Webster's New Standard Dictionary of the English Language 379 (Laird & Lee, 1920). Another, more comprehensive, contemporary dictionary defines "term" (along with irrelevant definitions) as "[o]bligations imposed by authority or assumed by contract; conditions offered, or offered and accepted; as, the *terms* of sale; I cannot accept your *terms*." Funk & Wagnalls New Standard Dictionary of the English Language 2486 (1913). In the broadest sense, "condition" could refer to statutory restrictions, as in "it is a condition of your freedom that you not burglarize another's home," but this would be an awkward usage. Such an improbable interpretation should not be made where surrounding text in the definition does not require it. Next, "imposed by authority" indicates that "terms" can apply to not only purely private relationships but also to relationships with the government. But the phrase does not refer to any and all relationships of authority. These parts of the definitions invoke situations such as criminal probation, civil licenses, and other authoritative contexts concerning particularized relationships between an authority and an individual, as opposed to general regulatory commands. One speaks of "terms of probation" or "terms of a license," but one does not speak of statutory prohibitions or commands inversely as "terms of lawful behavior," which usage, again, although grammatically possible, would be odd. So although "terms" may refer to arrangements between a government and a citizen, it fairly does so only in contexts where those two parties have a particularized relationship, not in the general sense that a citizen is subject to the terms of a statute. Furthermore, the statute speaks of "terms of . . . employment," not "terms of the law," indicating that the statute means terms "assumed by contract," not those "imposed by authority." *See id.* The word "arrangement" used in Webster's and the contractual examples given in Funk & Wagnalls clarify the meaning of "terms" when the respective definitions are considered as a whole. Employers and employees do not arrange the labor statutes; they arrange

their contractual relationships.  In summary, the word "terms" indicates negotiated terms, as per a contract, not externally imposed standards, as per a statute.

The respective dates of passage of sections 608.140 and 608.018 also support this conclusion.  Section 608.140 (implying a right of action to recover unpaid wages) predates section 608.018 (overtime standards) by half a century.  Section 608.140 was adopted in 1925.  *See* 1925 Nev. Stat. 226–27.  That pre-New Deal statute not only predates Nevada's overtime laws by fifty years, *see* 1975 Nev. Stat. 1583, it also predates federal wage and overtime laws by over a decade, *see* Fair Labor Standards Act of 1938, Pub. L. No. 75-718, 52 Stat. 1060 (1938).  Section 608.140 cannot have meant to the People of Nevada in1925 that there was a private right of action under state wage and overtime laws not to be enacted until 1975.  Overtime laws—and in fact virtually any kind of wage laws—were still a matter of fiction when section 608.140 was adopted.  Taking into consideration the "according to the terms of . . . employment" language of section 608.140, and what that language meant objectively when it was written, the statute implies only a traditional contractual claim under the common law.

The Nevada Legislature could easily have amended section 608.140 after the adoption of the wage and overtime laws in such a way as to permit a court to imply a private right of action under those laws, or it could have amended the statutes explicitly to provide for a private right of action, but it has done neither.  Also, under appropriate circumstances, a law implying a private right of action could extend to laws not yet written.  For example, a law could provide for fee shifting broadly in "all actions for wages."  Such a statute would fairly apply to future statutory wage claims despite the fact that the authors did not envision such laws.  But in this case, where the statute is not so broad, it is not reasonable to imply from section 608.140 a private right of action under yet-to-be-written wage and overtime statutes at a time when no such statutes existed in the State or even nationally.  Any subjective "intent" of the 1925 Nevada Legislature is inapposite, even if collective intent were a coherent concept, as it is only the meaning of the

statute as written (and when written) that is the law, because that is the only thing the Legislature and the Governor have necessarily agreed upon in the form required under the Nevada Constitution. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 392–93, 397–98 (2012). And if the authors had subjectively intended, i.e., if a majority of them had so intended, along with the Governor, to provide for a private right of action under yet-to-be-written wage and overtime laws, they simply failed to accomplish that result when they adopted a statute that cannot reasonably be read to provide for this. It does not matter that one might think the Legislature in 1925 would have wanted to include statutory wage claims within the implication had it anticipated such regulations. That is not the law the State enacted. A ball is not a strike simply because the pitcher meant to throw one (or would have attempted to throw one had he had more information). Batters have to deal with balls as they are arrive at the plate, and umpires must therefore in fairness call pitches as they arrive at the plate. The law the Legislature enacted in this case contains the qualifying phrase "according to the terms of his or her employment," and the Court must give these words effect if at all possible; it cannot read the language out of the statute based upon its guess as to what the Legislature and Governor would have agreed to had they in fact considered it.

The Nevada Supreme Court has not yet performed this analysis in a reported case where the result mattered, though it has noted in dicta and in unpublished cases that there is a private right of action (of some scope) under section 608.140. *See, e.g.*, *Baldanado*, 194 P.3d at 104 n.33; *Csomos v. Venetian Casino Resort, LLC*, No. 55203, 2011 WL 4378744, at *2–3 (Nev. Sept. 9, 2011) (noting in an unpublished opinion that section 608.140 implies a private right of action to recover wages but not addressing the scope of the implied right of action). Because the private right of action that can be implied under 608.140 only reasonably includes pre-wage-and-

1  overtime-law contractual claims, the Court will dismiss the section 608.018 claim.[3]

2  The Court will also dismiss the FLSA claim, because Plaintiff has failed to exhaust
3  remedies under the CBA. *See generally Inlandboatmens Union of Pac. v. Dutra Grp.*, 279 F.3d
4  1075 (9th Cir. 2002).  The CBA governs the "vigilant shift" policy and overtime, (*see* CBA §
5  10), and it requires the use of a detailed grievance procedure followed by arbitration, (*see id.* §
6  14).  Plaintiff does not allege having exhausted these remedies. (*See generally* Compl.).  The
7  Court need not address the preemption, personal jurisdiction, or Rule 8(a) arguments.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 8) is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

IT IS SO ORDERED.

Dated this 1st day of November, 2012.

_____
ROBERT C. JONES
United States District Judge

---

[3] Plaintiff has brought no contractual claim, and any such claim would almost certainly be preempted by the CBA.